LEHNER, Respondent, vs. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, Appellant.

*February 11—May 12, 1931.*

For the appellant there were briefs by *Bender, Trump, McIntyre & Freeman* of Milwaukee and *Bogue & Sanderson* of Portage, and oral argument by *Rodger M. Trump.*

For the respondent there was a brief by *Grady, Farnsworth & Walker* of Portage, and oral argument by *Daniel H. Grady.*

FOWLER, J. The defendant has elected not to come under the workmen's compensation act, and may not interpose the common-law defenses of negligence of a fellow servant, assumption of risk, or want of ordinary care of the employee. Sec. 102.01 (a), (b), (c), Stats. Thus the only issue was whether the hammersmith was negligent. The appellant assigns as error (1) Failure of the court to grant its motion for judgment notwithstanding the verdict, and (2) Failure to grant its alternative motion for a new trial "because of remarks of counsel calculated to incite the sympathies and passions of the jury in order to secure an exorbitant verdict."

(1) The contention here is that there is no evidence of negligence; that the finding of negligence rests on mere suspicion. We consider that the evidence as to the facts above stated warrants the inference that the hammersmith did not direct the giving of a "feeler" blow; that this was customarily done to avoid the flying out of the plate; and that failure to give such a blow constituted a want of ordinary care and was the proximate cause of the injury. No useful purpose would be served by detailing the testimony of the witnesses bearing upon these matters.

(2) The remark objected to was made during the argument of counsel to the jury and was to the effect that it

was not in the power of the jury to give the plaintiff money enough to restore to him what he had lost if they gave him the defendant's entire railway system. On objection of defendant's counsel to the remark plaintiff's counsel repeated what he claimed he had said. Defendant's counsel then stated: "I thought you said 'compensate' the plaintiff." Plaintiff's counsel replied: "Compensate, yes. I say compensate the plaintiff. Because I doubt if the plaintiff . . . would be willing to exchange the health that he has lost for all the money that would be in the power of this jury to give him." Defendant's counsel asked the court to instruct the jury that the remark was improper. Plaintiff's counsel then said: "I insist that it is a perfectly proper remark; it isn't within the power of the jury to restore a physical loss or an impairment of physical power. No money can restore that, therefore you must only value it as you would expect it would be valued by any person, exercising the same judgment and under oath to do what is fair and right." At the conclusion of the colloquy between counsel, plaintiff's counsel resumed his argument and the court did not pass upon the propriety of the remark objected to. Upon the argument in this court complaint was made by appellant's counsel that other remarks of like nature were made by plaintiff's counsel during his argument to the jury, which he had the reporter take down but did not object to at the time because as he claimed he did not want to prejudice his case before the jury by continually objecting. These statements had been incorporated in the bill of exceptions proposed by appellant, but had been stricken therefrom by the trial judge on objection of respondent on settlement of the bill. Appellant's counsel in a separate proceeding asked for a writ of *mandamus* to compel their inclusion in the bill. An alternative writ was issued and we withheld consideration of the case to await determination of the *mandamus* proceeding. Pursuant to the alternative writ the circuit judge has

included in the bill the stricken portion. We have now read the stricken portion and find nothing objectionable in it. It does contain appeals to sympathy through detailed statement of the plaintiff's condition and sufferings and mental distress claimed to have resulted from the injury, but it is seldom indeed that cases are argued in which counsel do not make or at least try to make all they can out of their clients' afflictions as they claim them to have resulted from the injuries received, and while counsel detailed the plaintiff's condition appealingly we do not see that he committed error, except in making the statement first excepted to. Strictly speaking the statement first made was true. But even so it was not legitimate argument. It did not tend to aid the jury in coming to a correct award, which is the only legitimate object and should be the only purpose of argument. On the contrary it tended to divert their attention from the correct measure of damages and to suggest matters not proper for their consideration. What was said about compensation during the colloquy of counsel aggravated the impropriety and intimated that compensation was impossible, which in a legal sense is erroneous. The judge should not have passed the objection without ruling or comment. He might well have stopped the colloquy of counsel and should have promptly stated in effect that the statement, although literally true, had no bearing upon the matter of compensation or the amount that should be awarded and should be disregarded. Such remarks when passed upon and properly characterized by the trial judge on objection are likely to fail of their object and to work to the disadvantage rather than the advantage of the party in whose behalf they are made, and if they are habitually promptly and forcefully disposed of by a trial judge they will seldom be indulged in by counsel in trials before him. But while we cannot approve of the remark or of the failure of the trial judge to declare it improper and direct the jury to disregard it, we are of opinion

that it should not work reversal. It does not affirmatively appear that it operated to the prejudice of the defendant either by inducing the determination of the jury upon the issue of negligence or by inducing an excessive verdict. The finding of negligence is so amply supported that there is no ground for believing that it would have been otherwise but for the remark. And while the award of damages is high, it is not beyond what a jury might very properly award if they believed the plaintiff's condition to be as he claimed it and further believed that this condition was caused by the physical injuries sustained in the accident. The jury were justified in believing from the evidence that the facts were as follows: A steel plate weighing five or six pounds was struck a 6,000-pound blow by a steam hammer and hurled aside, striking plaintiff, standing fifteen feet away, on the mouth and side of the forehead above the right eyebrow; the blow rendered plaintiff unconscious for several hours; when he regained consciousness he could not raise his head; eleven teeth were loosened and because of the injury subsequently removed and replaced by a plate. The plaintiff suffered severe pains in his head, lips, and mouth, experienced dizziness and backache, and was unconscious part of the time during a five-day stay in a hospital. For a period of three months after removal from the hospital he remained in bed off and on on account of dizziness and pain in his head and the small of his back. For eight weeks he spit clots of blood and did not improve for that period. He began light work two and a half months after his injury, although not feeling able to do so, upon advice of his physician. The defendant company gave him light work under conditions of normal temperature, but even so he was nearly overcome by heat one summer day and rendered ill for eight days although previous to the injury he had worked in a blacksmith shop overheated from the furnace therein for heating steel for annealing. He continued the light work

for two years, during which time he experienced headaches, dizziness, nervousness, and backache almost continually. There was no improvement in his condition after sixty days from the accident. He is ten pounds lighter than before the accident. He has been troubled with sleeplessness and kidney trouble. He lost two and a half or three months' time during the two-year period. He had always been in good health before the accident, had never experienced any of the symptoms stated, had never lost time from work, and was able to work in the overheated blacksmith shop during the hottest weather without difficulty or inconvenience. The work as blacksmith helper, at which he had been engaged for thirteen years, was heavy work, the heaviest in the shop. He was earning $110 per month at the time of the accident. After discharge by the company he was unable to secure light work and is incapacitated for heavy work. Physicians testified that the blow received was an adequate producing cause of the conditions complained of, even to the kidney trouble, going into details of explanation which it would serve no useful purpose to state. In the opinion of physicians there resulted from the blow a brain concussion and a basal skull fracture opening into sinuses into which exudations from the brain enter and the symptoms indicate organic injury to the brain or brain covering which having existed for two years will be permanent. In the opinion of physicians as result of the blow plaintiff's hearing was impaired; the septum of his nose deflected; his pulse rapid; chronic Bright's disease present; and these conditions are permanent. Plaintiff's family physician testified that after the accident the plaintiff's condition bordered on insanity and his mental and physical condition are both weaker than before the injury. There was no evidence of any other cause for the condition complained of. Upon this evidence we cannot say that the award of damages is excessive or such as to indicate that it was induced by prejudice or passion of the jury.

Counsel for defendant cites several decisions of this court in support of his contention that the remarks of plaintiff's counsel should work reversal: *Waterman v. C. & A. R. Co.* 82 Wis. 613, 52 N. W. 247, 1136; *Schaidler v. C. & N. W. R. Co.* 102 Wis. 564, 78 N. W. 732; *Taylor v. C. & N. W. R. Co.* 103 Wis. 27, 79 N. W. 17; *Andrews v. C., M. & St. P. R. Co.* 96 Wis. 348, 71 N. W. 372; *Manol v. Moskin Bros.* 203 Wis. 47, 233 N. W. 579; *Higgins v. Stang,* 195 Wis. 498, 218 N. W. 832. In all of these cases the award of damages was considered excessive. In some of them other errors were involved that of themselves compelled reversal. No case is cited, and we know of none, in which this court has reversed a judgment because of improper remarks of counsel in which the verdict on the main issues or the award of damages, or both, were not considered as not supported by the evidence and apparently influenced by the erroneous statements. Counsel also cites a recent Nebraska case, *Cooper v. State,* 120 Neb. 598, 234 N. W. 406, 409. The opinion contains much that counsel who from excessive zeal or cupidity are prone to overstep the bounds of legitimate argument would do well to read and be governed by as do the cases of this court above cited. But we cannot approve the doctrine, if the decision of the Nebraska court declares it, that a judgment sufficiently supported by evidence should be reversed merely because of improper remarks of counsel in argument.

*By the Court.*—The judgment is affirmed.