BAILEY and another, Appellants, vs. BACH and another, Respondents.

*October 4—November 8, 1950.*

Hᴜɢʜᴇs and Bʀᴏᴀᴅғᴏᴏᴛ, JJ., dissent in part.

For the appellants there was a brief by *Schubring, Ryan, Petersen & Sutherland,* and oral argument by *Ralph E. Axley,* all of Madison.

For the respondents there was a brief by *Roberts, Roe, Boardman, Suhr & Bjork* of Madison, and oral argument by *Walter M. Bjork.*

BROWN, J. Regarding the merits of the jury's findings we think it sufficient to say that a study of the record convinces us that the questions cannot be decided as a matter of law and therefore the answers must remain as the jury gave them. While Mrs. Bailey testified that her speed was not over thirty-five miles per hour, which was the posted limit at the scene of the accident, and her counsel argued that his computations of estimated time spent in traveling estimated distances prove her speed to be within the limit, two disinterested witnesses placed it as not less than forty-five miles per hour, which would be negligence as a matter of law. We cannot say that the computation, made on a basis of so many variables, makes the witnesses' testimony incredible, while the distance traveled by the automobile after it went off the highway, and the force with which it hit at the end of its run, tend to corroborate them. Moreover, the learned trial court instructed the jury that it *must* find the speed was a negligent one if over thirty-five miles per hour but that,—

"It is for you to determine whether the speed was over thirty-five miles per hour and, if under, whether the speed at which she was driving was negligence under the conditions and circumstances then present and under the rule of law as given you by these instructions."

The instruction correctly states the law and was not objected to by counsel, either at the trial or here, as inapplicable to the facts. He may have convinced the jurors that his client's speed was less than thirty-five miles per hour without persuading them that it was not a negligent speed under the circumstances. No question was submitted concerning speed in miles per hour—we do not say that there should have been—but without that it is unresolved whether hers was determined to be a negligent speed as a matter of law or as a matter of fact. There was evidence to support the finding on either alternative and it must stand.

Turning to Mrs. Bailey's management and control, she submits that her loss of control was produced by Bach's sudden entry into her path which created an emergency and was not due to any negligence of her own. There was her testimony that she saw Bach when he "crawled" into the highway, and his that she was then some eight hundred feet away. She did nothing except blow the horn and accelerate slightly and attempt to go by on his right. There was contrary testimony, of course, on the distance which separated them when he entered the highway but the jury was not required to accept the sudden-emergency theory. We consider there is evidence sustaining this finding and the learned trial court correctly denied the motion to change it. The same thing applies to plaintiff's criticism of the finding that Bach was not negligent as to lookout. He testified that he saw Mrs. Bailey just before he entered the highway and she was then eight hundred to nine hundred feet away. He did not see her afterward but he was turning north which placed her behind him. Under the circumstances of this case it was for the jury to say whether the lookout was sufficient to meet the standard of ordinary care.

The division of the total negligence is peculiarly within the jury's province and we can find nothing in the record to justify our interference with it. Plaintiff objects that a requested instruction was denied and the one given in its place was inadequate as not giving sufficient emphasis to the duty a driver entering a public highway from a private drive has to yield the right of way to autos already on the highway. She submits that if the requested instruction had been given the jury would have better understood the parties' respective rights and duties and consequently would have increased the share of causal negligence which it allotted to defendant. We think that the jury was properly instructed and that it understood defendant's duty. It found him negligent in this re-

spect. The proportion of negligence it assigned to him in comparison with that of plaintiff is more likely attributable to plaintiff's description of her own conduct than to the jury's misunderstanding of duties concerning the right of way.

Plaintiff submits, also, that the findings on right of way, Bach's lookout, and plaintiff's speed are inconsistent, requiring a new trial. Bach saw her but miscalculated and drove into her lane of travel. We think the jury might properly find, as it did, that his lookout complied with ordinary care but that his encroachment on her traffic lane did not. We do not find inconsistency here nor between these factors and the finding that plaintiff's speed exceeded that required by ordinary care.

Plaintiff bases her final assignment of error on this extract from the record:

"The statement made by counsel and the ruling of the court were as follows:

"Mr. Axley: Counsel said to the jury in his argument that in order for there to be a recovery, the plaintiff's speed must be less than thirty-five miles an hour. That is not the law in this state and I object to the statement and request that the jury be instructed to take their instructions as to the law from the court.

"Mr. Roberts: Your Honor, I hadn't finished the statement, and I didn't want to finish it since counsel had started the objection. May I finish it, then the objection?

"The Court: Go ahead.

"Mr.Roberts: —and if such speed is the cause of the accident. Now, if you wish to object?

"Mr. Axley: I again object. The mere fact it may be a cause does not preclude recovery under the law of this state and I think Your Honor has the cases upon that subject.

"The Court: The statement may stand. Go ahead."

The contention is that counsel's attempt to inform the jury of the result of an answer was prejudicial to the plaintiff and constitutes reversible error. There is no doubt that counsel's statement was improper and that at the very least the learned

trial court should have instructed the jury in accordance with the request. More vigorous disapproval would have been desirable, while the action that was taken amounted to a ratification of the improper argument. It was formerly held to be reversible error, without more, if the court or counsel informed the jury of the effect of an answer upon the ultimate result of the verdict but the rule was changed in 1909 by the enactment of sec. 3072m, Stats., which now appears as sec. 274.37, and reads as follows:

"*Judgments; application to reverse or set aside; new trial; reversible errors.* No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal, on the ground of misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure the new trial."

Since that time it has been necessary for the court to find that actual, instead of presumed, prejudice to the complaining party resulted from an improper argument before the error warrants a reversal or a new trial. *Behling v. Wisconsin Bridge & Iron Co.* (1914), 158 Wis. 584, 595, 149 N. W. 484; *Standard Accident Ins. Co. v. Runquist* (1932), 209 Wis. 97, 108, 244 N. W. 757; *Anderson v. Seelow* (1937), 224 Wis. 230, 234, 235, 271 N. W. 844; *Nelson v. Pauli* (1922), 176 Wis. 1, 11, 186 N. W. 217; *Lehner v. Chicago, M., St. P. & P. R. Co.* (1931), 204 Wis. 558, 562, 563, 236 N. W. 572. Whether prejudice is found or not, the practice of so informing the jury has been severely criticised by this court, as in the *Behling, Nelson,* and *Anderson Cases, supra,* and in *Pecor v. Home Indemnity Co.* (1940), 234 Wis. 407, 419, 420, 291 N. W. 313, to all of which we invite attention and to which we add our own expression of disapproval. To

entitle plaintiff to a new trial it is not sufficient, however, that we declare the argument and the failure of the trial court to admonish counsel and to instruct the jury were improper and wrong. We must also find that prejudice to the plaintiff resulted and this we have been unable to do. We cannot even say that the jury answered the question on plaintiff's speed in accordance with counsel's suggestion. Plaintiff's argument on that question, which we have already discussed, may have convinced the jury that the speed was under thirty-five miles per hour and still it thought it a negligent speed under the circumstances and answered the question accordingly. Furthermore, we consider the evidence of negligence in respect to her speed so strong as to make it very unlikely that the jury would have answered the question differently if the unfortunate remark had not been made. Accordingly, we hold the error was not prejudicial.

Reversible error not being found, the judgment will be affirmed.

*By the Court.*—Judgment affirmed.

HUGHES, J. (*dissenting*). As indicated by the majority, all issues to be determined were within the province of the jury.

I am of the opinion that the statement by defense counsel to the effect that the plaintiff could not recover if exceeding thirty-five miles per hour, coupled with the court's remark that "The statement may stand," prejudiced the plaintiff's right to a fair trial.

In the absence of such remark, the jury might have assessed less than half of the causal negligence to plaintiff. The exchange between court and counsel may well have influenced the jury to make the determination which it did on comparative negligence. In the absence of affidavits from jurors there is, of course, no positive proof. However, that is almost impossible to produce. The results are such that the prejudice can be detected.

At all events the plaintiff is entitled to win or lose after a fair trial, and the defendant should be made to suffer the inconvenience of a new trial because of the prejudicial statement of his counsel. To censure the defendant for the impropriety while allowing him to retain the advantage gained amounts to no rebuke at all. The judgment should be reversed and a new trial ordered.

I am authorized to say that Mr. Justice Broadfoot concurs in this dissent.